**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **WILMA I. FITZPATRICK** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.:    2:07cv519-ID** |
| ) | |
| **ALABAMA DEPARTMENT OF** ) | |
| **AGRICULTURE & INDUSTRIES** ) | |
| ) | |
| **Defendant.** ) | |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**COMES NOW,** the Defendant Alabama Department of Agriculture & Industries, and submits this Brief in Support of the Motion for Summary Judgment contemporaneously filed herein, and states as follows:

**I.  Introduction**

This is an action for relief under 42 U.S.C. §2000e, et seq., (Title VII).  The plaintiff is employed by the Defendant, Alabama Department of Agriculture as the Program Director for Safety and Quality Assurance in the laboratories.  She alleges that the defendant discriminated against her on the basis of her race, her sex, and retaliated against her.

The plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on September 27, 2006.  In her EEOC charge, the plaintiff made 4 distinct claims of discrimination or retaliation[1]: 1) she was transferred to a different position in 2006, 2) she was moved to a less desirable office space when she was transferred, 3) she received no

---

[1] In her EEOC charge, the plaintiff only mentions discrimination in terms of the treatment of black employees.  She makes no mention of the treatment of females or that her allegations involved sex discrimination claims.  She only marked the "Retaliation" box on the EEOC form under the heading "Discrimination Based On".  She did not indicate that the discrimination claim was based on sex.

training in her new position, and 4) she was denied a promotion to the position of Division Director in 2006.

The plaintiff filed the present lawsuit on June 12, 2007. The plaintiff brings six distinct claims in her judicial complaint: 1) sex discrimination when she was not immediately issued a state car when she was first promoted to Program Director in 2002; 2) sex discrimination when she failed to receive a promotion to Division Director in 2006; 3) sex discrimination when she received a low ranking from the Alabama State Personnel Department in 2003 on the register for the position of Division Director[2]; 4) race discrimination when she was not immediately reissued a state vehicle in 2003, after a mandate by the governor removed state vehicles from individuals driving fewer than $20,000 miles per year; 5) retaliation when she was transferred to the position of Program Director for the Safety and Quality Assurance Program; and 6) retaliation when along with her transfer, she was moved to an office closer to the labs for which she was providing safety and quality assurance oversight.

The plaintiff's claims of 1) sex discrimination when she was not immediately issued a state car when she was first promoted to Program Director in 2002; 2) sex discrimination when she failed to receive a promotion to Division Director in 2006; 3) sex discrimination when she received a low ranking from the Alabama State Personnel Department in 2003 on the register for the position of Division Director; and 4) race discrimination when she was not immediately reissued a state vehicle in 2003, after a mandate by the governor removed state vehicles from individuals driving fewer than $20,000 miles per year are barred because the plaintiff failed to raise them in her EEOC charge. Further, all of the plaintiff's claims of discrimination or

---

[2] In order to be considered for some positions with the State of Alabama, an individual must be on the employment register with the Personnel Department. An applicant must meet the basic job requirements for a position to be placed on the register. Applicants are then ranked by the Personnel Department for a particular position, and the rankings are sent to the state agency with the job opening for the ultimate hiring decision.

retaliation that occurred prior to 180 days before the filing of her EEOC charge (March 31, 2006 to September 27, 2006) are time barred.

The only claims that are common to both plaintiff's EEOC charge and her judicial complaint are 1) she was transferred to a different position in 2006, 2) she was moved to a less desirable office space when she was transferred, and 3) she was denied a promotion to the position of Division Director in 2006. However, in her judicial complaint, the plaintiff asserts that the denial of a promotion to the position of Division Director in 2006 was due to sex discrimination. The plaintiff's claims of sex discrimination are barred because she failed to allege sex discrimination at all in her EEOC charge. Therefore, the only claims properly before the court are plaintiff's claims of retaliation arising out of her transfer and new office space in 2006.

The Alabama Department of Agriculture denies all claims of retaliation and discrimination and asserts that plaintiff cannot establish a *prima facie* case of race discrimination, sex discrimination or retaliation. The defendant produces non-discriminatory, non-retaliatory reasons for its conduct and the plaintiff cannot establish that those reasons are pretextual. Accordingly, summary judgment is due to be granted to the Defendant on all of the Plaintiff's claims.

## II.  Statement of Undisputed Facts

Plaintiff, Wilma Fitzpatrick, became employed with the Alabama Department of Agriculture in December, 1979 as a Chemist I. (Fitzpatrick depo. p.11. l. 12-15). She was promoted to Chemist II in 1987. (Fitzpatrick depo. p. 11, l. 23 to p. 12, l. 2). In the early 1990s, the plaintiff was promoted to Chemist III. (Fitzpatrick depo. p. 12, l. 1-2). The plaintiff was promoted to Program Director in 2002. (Fitzpatrick depo. p. 12, l. 2-3). She was the Program

Director of the following six units: Plant, stockyards and brands/audits and reports, the seed lab, the feed and fertilizer lab, gins and warehouse, and agriculture compliance. (Fitzpatrick depo. p. 12, l. 4-17).

When the plaintiff was promoted to Program Director in 2002, she was not assigned a state car right away. (Fitzpatrick depo. p. 53, l. 9-12). The plaintiff claims that she was not issued a state car right away because of her sex; however, these claims are based solely on her assumption. (Doc. 1, para. 9; 25; Fitzpatrick depo. p. 120, l. 3-16). In 2003, she asked Deputy Commissioner Ronnie Murphy about assignment of a state car, and within a week, she was assigned a state car. (Fitzpatrick depo. p. 53, l. 14-20). Any time that the plaintiff needed to travel for work, state cars were available to her through the state motor pool. (Fitzpatrick depo. p. 55, l. 12-16). There was never a time that the plaintiff needed a car for state business when she did not have access to a state car from the motor pool. (Fitzpatrick depo. p. 55, l. 17-20).

In April 2003, the Governor issued a mandate that because of budget issues, issuance of state cars to employees who drove fewer than 20,000 miles a year were to be revoked. (Fitzpatrick depo. p. 53, l. 23 to p. 54, l. 9; p. 57. l. 17-22). The plaintiff drove fewer than 20,000 per year, so her assignment to a state vehicle was revoked. (Fitzpatrick depo. p. 57. l. 17-22). State cars were eventually reassigned to employees, but the plaintiff does not know how much those employees traveled per year. (Fitzpatrick depo. p.57, l. 23 to p. 58, l. 5). The plaintiff claims that she was discriminated against on the basis of her race because she was not reissued a car within in the months following the governor's mandate. (Fitzpatrick depo. p.114, 1-7). However, the plaintiff does not know who got a state car reissued, and her claim that the reissuance of cars was racially motivated is simply based on assumption. (Fitzpatrick depo. p. 115, l. 4 to p. 117, l. 20).

4

In April 2003, the plaintiff applied for the position of agriculture division director and was ranked eight out of eight applicants by the Alabama Personnel Department. (Fitzpatrick depo. p. 58, l. 6-21). The ranking of applicants is done solely by the Alabama Personnel Department. (Fitzpatrick depo. p. 58, l. 13-16; Affidavit of Teresa Brunson). The plaintiff claims that she was ranked so low because she is a woman. (Doc. 1, para. 13; Fitzpatrick depo. p. 59, l. 5-8). Other than believing she had more years of experience than other applicants, the plaintiff has no evidence that her low ranking was based on her sex. (Fitzpatrick depo. p. 59, l. 14 to p. 60, l. 9; p. 61, l. 11). The plaintiff simply bases this claim on her assumption. (Fitzpatrick depo. p. 120, l. 17 to p. 121, l. 3).

The Department of Agriculture needed a qualified person to work with and coordinate with its laboratories, to upgrade safety, quality, and certification issues. (Hester depo. p. 116, l. 12-17). The plaintiff had been previously assigned some of the laboratory oversight in January 2006, but was fully moved into the position of Program Director in charge of Safety and Quality Assurance in July, 2006. (Hester depo. p. 116, l. 23 to p. 117, l. 4). On July 18, 2006, the plaintiff became responsible for safety and quality assurance in the labs. (Reassignment letter dated July 18, 2006; Fitzpatrick depo. p. 15, l. 11-18). The plaintiff is now in charge of safety and quality assurance over each of the six laboratories for the Department of Agriculture. (Fitzpatrick depo. p. 39, l. 7-17).

The Department of Agriculture had received several complaints with risk management about the seed laboratory prior to January 2006 and saw a need for centralized oversight of the safety, quality assurance and certification issues in the laboratories. (Lance Hester depo. p. 117, l. 16 to p. 118, l. 7). Division Director Lance Hester and Deputy Commissioner Ronnie Murphy evaluated the needs of the laboratories and determined that the plaintiff's laboratory background

suited her for the position of Program Director in charge of Safety and Quality Assurance. (Hester depo. p. 120, l. 11-18; p. 121, l. 5-9). The plaintiff's position is a management position whereby she manages the Safety and Quality Assurance Program for the Department of Agriculture. (Hester depo. p. 121, l. 10-16). Previously, safety and quality assurance issues were assigned to various people in the different labs. (Hester depo. p. 121, l. 21 to p. 122, l. 6). However, because there had been no formal Safety and Quality Assurance Program, some issues were falling through the cracks. (Hester depo. p. 122, l. 5-8).

Along with the need to create a centralized Safety and Quality Assurance Program, an emerging responsibility for the laboratories was to maintain the ability to ship items overseas. (Hester depo. p. 122, l. 18-23; p. 124, l. 23 to p. 125, l. 3). In order to do so, the Department must receive certification from the International Standards Organization (ISO), which is a long, drawn-out process. (Hester depo. p. 122, l. 23 to p. 123, l. 6). Also, because of the fallout after the September 11, 2001 terrorist attack, certification with the Food and Emergency Response Network (FERN), a national organization, is needed in order for the Department to do certain type analysis of agriculture products in the event of a national event. (Hester depo. p. 123, l. 7-12). There are certain types of agricultural samples the Department of Agriculture can analyze now, and it has to maintain certification in order to be a part of the Food and Emergency Response Network so it can use those services in other states, the FDA and the federal government if needed. (Hester depo. p. 123, l. 12-17). These certification responsibilities fall under the Safety and Quality Assurance Program and are among those transferred to the plaintiff in January 2006. (Hester depo. p. 118, l. 16-19).

The plaintiff was qualified for the position of Program Director in charge of Safety and Quality Assurance because she had been a Chemist III for many years and had experience with

safety issues in the labs.  (Hester depo. p. 123, l. 18 to p. 124, l. 4).  With this transfer, the plaintiff did not receive any reduction in pay or benefits and maintained the position of Program Director.  (Fitzpatrick depo. p. 38, l. 2 to p. 39, l. 3; p. 129, l. 21 to p. 130, l. 11).  The plaintiff was transferred to an office closer to the labs for which she would be providing oversight. (Fitzpatrick depo. p. 82, l. 18-22).  The plaintiff was also assigned a state car with the transfer. (Fitzpatrick depo. p. 83, l. 16-17).  She has topped out in her pay level and receives across-the-board adjustment raises in pay.  (Fitzpatrick depo. p. 89, l. 17 to p. 90, l. 4).

The Department of Agriculture purchased membership for the plaintiff in the Association of Analytical Communities (AOAC), the scientific association dedicated to analytical excellence and laboratory quality assurance.  (Fitzpatrick depo. p. 49, l. 21 to p. 50, l. 4).  The AOAC sends the plaintiff emails notifying her of different meetings; however, she has never attended a meeting or even requested permission to do so.  (Fitzpatrick depo. p. 50, l. 8-19).  The plaintiff has a background in chemistry and has been offered opportunities by her employer to visit labs and do training on quality assurance and safety.  (Fitzpatrick depo. p. 93, l. 8-14).  Quality assurance and safety are important for the labs.  (Fitzpatrick depo. p. 97, l. 23 to p. 98, l. 2).

In June 2006, the plaintiff complained to the Alabama State Employees Association (ASEA) about alleged discrimination at the Department of Agriculture.  (Fitzpatrick depo. p. 17, l. 17-22).

In September 2006, plaintiff applied for the position of Division Director; however, the open positions were filled by Lance Hester and Tony Cofer.  (Fitzpatrick depo. p. 98, l. 17 to p. 99, l. 1).  The plaintiff claims to have been the most qualified person for the position filled by Mr. Cofer, Division Director over Pesticide Management, because she claims to have more experience than he does.  (Fitzpatrick depo. p.99, l. 2-10).  However, the plaintiff does not know

Mr. Cofer's educational background, his level of experience and has no evidence that she did not receive the position because of her sex. (Fitzpatrick depo. p. 99, l. 6 to p. 100, l. 22).

Mr. Cofer was hired to be an Agriculture Division Director over Pesticide Management because since 1998, he had worked in Pesticide Management as a Pesticide Administrator, a position which was changed to Agriculture Program Director in 2001. (Affidavit of Teresa Brunson). Mr. Cofer reported to and formally assisted the previous Division Director, Dr. John Bloch. (Affidavit of Teresa Brunson). Immediately upon the retirement of longtime Division Director, Dr. John Bloch, Mr. Cofer was made the interim director to continue the regulatory functions of Pesticide Management. (Affidavit of Teresa Brunson). Further, Mr. Cofer was ranked number three (3) on the State Personnel Register for this position while the plaintiff was ranked number five (5). (Affidavit of Teresa Brunson). An applicant only has to be in the top 10 rankings to be appointed, and the ranking is solely handled by the Alabama State Personnel Department. (Affidavit of Teresa Brunson). Prior to working at the Department of Agriculture and Industries, Mr. Cofer served as a Senior Environmental Scientist at the Alabama Department of Environmental Management. (Affidavit of Teresa Brunson). After a review of the other individuals on the register, and their education and work experience, an executive decision was made to hire Mr. Cofer for the Division Director position based on his unique qualifications and work experience. (Affidavit of Teresa Brunson).

Ms. Fitzpatrick filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on September 27, 2006. (EEOC Charge of Discrimination). The text of Ms. Fitzpatrick's charge is as follows:

> I began my employment with the employer named above as a Chemist I on December 14, 1979. On June 23, 2006, I complained to the Alabama State Employee Association that Blacks were being discriminated against by the employer named above. On or

> about July 20, 2006, I was required to move to a less desirable
> office space, suffered a complete change in my job responsibilities
> without an increase in my wages and not given any training for the
> new duties I am now required to perform.  It appears that my
> employer has placed me in a position wherein I have been doomed
> for failure.  On or about September 1, 2006, I was not promoted to
> the position of Division Director.  I was informed that I was
> removed from my former office space to make room for new hires.
> I have not been given a reason as to why I was not promoted.  I
> believe I was discriminated against in violation of Title VII of the
> 1964 Civil Rights Act, as amended in retaliation to my complaint
> of the overall treatment of Blacks in the workplace.

(Id.).

In her charge, Ms. Fitzpatrick claims that the earliest date of discrimination is July 20, 2006 and the latest date is September 1, 2006.  (Id.).  She does not indicate that the alleged discrimination or retaliation was continuing.  (Id.).  Ms. Fitzpatrick filed the present lawsuit on June 12, 2007 alleging race discrimination, sex discrimination, and retaliation.  (Doc. 1).  Ms. Fitzpatrick's claim of race discrimination in her judicial complaint is based her allegation that she did not receive a state car back in 2003.  (Doc. 1, para. 28; Fitpatrick depo. depo. p.114, 1-7).  Ms. Fitzpatrick's claim of sex discrimination in her judicial complaint is based on her allegations that she was denied a state car back in 2002, that she received a low ranking on a register in 2003, and that she was denied a promotion to the position of division director in 2006.  (Doc. 1, para. 25; Fitzpatrick depo. p. 120, l. 3-16; p. 99, l. 6 to p. 100, l. 22).  Ms. Fitzpatrick's retaliation claim is based upon her reassignment to Program Director in charge of Quality Assurance and Safety in the labs with a new office.  (Fitpatrick depo. p. 75, l. 8-11; p. 121, l. 12 to p. 122, l. 5).

The Department of Agriculture categorically denies it discriminated or retaliated against Ms. Fitzpatrick.

### III.  Summary Judgment Standard

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment is due to be entered in favor of the moving party if "there is no genuine issue as to any material fact."  The moving party must first come forward with proof of the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986).  The moving party may meet this burden by identifying portions of the pleadings, depositions, and answers to interrogatories, admissions or affidavits that demonstrate the absence of an issue of material fact.  Id. at 323.

The burden then shifts to the non-moving party to present affirmative evidence that there is a genuine issue of material fact.  Fed.R.Civ.P. 56(e);  Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Any inferences to be drawn from the underlying facts should be viewed in a light most favorable to the non-moving party. Matsushita, 475 U.S. at 587.  If the record as a whole "could not lead a rational trier of fact to find for the non-moving party there is no 'genuine issue for trial'."  Id.

### IV.  Argument

Plaintiff has asserted Title VII claims for race discrimination, sex discrimination, and retaliation against the Defendant.

#### A.    Title VII Claims Untimely and Not Properly Raised in EEOC Complaint

Title VII makes it unlawful for an employer to discriminate against an individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race or sex.  42 U.S.C. § 2000e-2(a)(1).   In evaluating a Title VII claim, a Court must first examine the EEOC administrative charge and investigation to determine the scope of the judicial complaint.  Robinson v. Regions Financial Corp., 242 F.Supp.2d 1070, 1079 (M.D. Ala. 2003), citing Griffin v. Carlin, 755 F.2d 1516, 1522 (11th Cir. 1985).  A plaintiff's judicial

complaint under Title VII is limited to acts of discrimination contained in her EEOC charge. Coon v. Georgia Pacific Corp., 829 F.2d 1563, 1569 (11th Cir. 1987); Robinson, 242 F.Supp.2d at 1079 (citing Alexander v. Fulton County, 207 F.3d 1303, 1332 (11th Cir. 2000)).  A judicial complaint may also include matters "which can reasonably be expected to grow out of the charge of discrimination."  Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589 n. 8 (11th Cir. 1994).

  i.    Claims Not Mentioned in EEOC Complaint

Ms. Fitzpatrick makes 4 distinct claims in her EEOC complaint: 1) she was transferred to a different position in 2006, 2) was moved to a less desirable office space, 3) received no training, and 4) was denied a promotion to the position of Division Director in 2006.

Ms. Fitzpatrick makes no mention in her EEOC charge of the issuance of a state car in 2002, reissuance of a state car in 2003, or low ranking on the register for the position of Division Director in 2003.  Although she references a claim relating to denial of a promotion to the position of Division Director, she makes no mention in her EEOC charge of that being a sex discrimination claim.  Her judicial complaint specifically identifies that claim as a sex discrimination claim.  No such claim appears in her EEOC charge.  Even though not specifically mentioned in plaintiff's EEOC charge, these claims are likewise not reasonably related to charges mentioned in the file or ones which reasonably grew out of the existing charges.  Thus, the only claims that are common to both the EEOC complaint and the judicial complaint are:  1) transfer to a different position in 2006, and 2) move to a less desirable office space.

In Swanson v. Civil Air Patrol, 37 F.Supp.2d 1312 (M.D. Ala. 1998) the Court found plaintiff's claim of unequal pay was barred because it was not mentioned in her EEOC charges. The Swanson plaintiff's first EEOC charge made a claim for hostile environment, sexual harassment and retaliation.  Her second EEOC charge specifically stated a claim for retaliation.

Judge Albritton held that because neither of the plaintiff's charges mentioned disparate treatment on the basis of gender because of unequal pay, the Court could not find the claims to be like or related to claims of hostile environment sexual harassment or retaliation. Summary judgment was granted for the defendant on plaintiff's unequal pay claim.

In <u>Robinson v. Regions Financial Corp.</u>, <u>supra</u>, the Court similarly examined whether plaintiff's Title VII claims which were not included in her EEOC charge could be included in plaintiff's judicial complaint. Plaintiff's EEOC charge alleged the denial of one promotion. Plaintiff's judicial complaint alleged, <u>inter alia</u>, four individual instances in which she was allegedly denied a promotion. These four instances were referred to by this Court as Claim A, Claim B, Claim C and Claim D. Three of those claims survived a Statute of Limitations defense, but only Claim B was included in the plaintiff's EEOC charge. The Court noted that while Claims C and D were the same as Claim B, in that they all involved the denial of a promotion, this Court held that Claims C and D were entirely new acts of discrimination never investigated by the EEOC. These claims arose after plaintiff filed her EEOC charge and were distinct from the claim that was the subject of the EEOC charge. As a result, the two later promotions could not reasonably have been expected to grow out of the plaintiff's original charge of discrimination. To the extent they were asserted under Title VII, the claims were barred.

Courts have found numerous other claims not specifically enumerated in an EEOC charge to be barred. <u>Blalock v. Dale County Board of Ed.</u>, 84 F.Supp.2d 1291, 1301-1302 (M.D. Ala. 1991) (where plaintiff's EEOC charge only raised claims for gender-based disparate pay and disparate treatment, claim for hostile work environment was separate and distinct and not reasonably related to other claims); <u>Sweeney v. State of Alabama Alcoholic Beverage Control Bd.</u>, 94 F.Supp.2d 1241, 1267 (M.D. Ala. 2000), *vacated in non-relevant part and superseded in*

*non-relevant part by* 117 F.Supp.2d 1266 (M.D. Ala. 2000) (where plaintiff's EEOC charge alleged defendant failed to reasonably accommodate plaintiff's alleged disability but did not contain an allegation regarding a hostile work environment based on race, sex or alleged disability, the claim was unrelated and, therefore, barred).

There is no mention in Ms. Fitzpatrick's EEOC charge of any alleged discrimination or retaliation regarding issuance of a state car, or her low ranking for the position of Division Director in 2003.  In her judicial complaint, Ms. Fitzpatrick alleges that she was not issued a state car at various times because of her sex or race. (Doc. 1, para. 9, 12).  However, she made no such allegations in her EEOC charge.  Further, there is no mention in Ms. Fitzpatrick's EEOC charge of any discrimination based upon her low ranking for the position of Division Director in 2003.  Therefore, these claims are barred.

Additionally, the plaintiff's EEOC charge did not raise any sex discrimination claims at all.  The EEOC charge made no mention of sex discrimination and gave no indication that her allegations involved such a claim.  The plaintiff specifies in her complaint that the denial of a promotion to Division Director in 2006 is a sex discrimination claim.  Because the EEOC complaint contained no claim of sex discrimination, this claim is barred for failure to raise it to the EEOC.  Accordingly all of plaintiff's sex discrimination claims are barred.

ii.    Claims Are Time Barred

To the extent that Ms. Fitzpatrick makes claims for race discrimination, sex discrimination, or retaliation for events prior to March 31, 2006, they are barred for failure of the plaintiff to file her charge within 180 days of the discriminatory act.  Ms. Fitzpatrick filed an EEOC Charge of Discrimination on September 27, 2006.  This Court may only consider discrete acts that occurred between March 31, 2006 and September 27, 2006 (180 days before September

27, 2006).  42 USC § 2000 e – (5)(e)(1) (charge shall be filed within 180 days after the alleged

unlawful employment practice occurred.)  Accordingly, any alleged discriminatory conduct that

occurred prior to March 31, 2006 is time-barred.

In addition to the plaintiff not raising the following allegations in her EEOC charge:  1)

the issuance of a state car in 2002, 2) reissuance of a state car in 2003, or 3) application for the

position of Division Director in 2003, none of these claims fall within the period of March 31,

2006 to September 27, 2006.  Therefore, these claims are barred.

Based upon the above, defendant submits that the only claims properly before the court

are 1) retaliation when she was transferred to a different position in 2006, and 2) retaliation when

she was allegedly moved to a less desirable office space.

B.    Title VII Claims

Even if Plaintiff's claims were timely raised in her EEOC charge, plaintiff cannot

establish a viable cause of action for discrimination or retaliation under Title VII.

i.    Race and Sex Discrimination

The plaintiff claims that she was discriminated against on the basis of her race and sex

but offers no direct evidence of discrimination.  With respect to circumstantial claims of race

discrimination under Title VII, the Eleventh Circuit held that:

> Title VII makes it unlawful for an employer to discriminate against
> any individual with respect to his compensation, terms, conditions,
> or privileges of employment, because of such individual's race,
> color, religion, sex, or national origin. Where direct evidence of
> discrimination is unavailable, a Title VII plaintiff may nonetheless
> present circumstantial evidence of discrimination sufficient to
> create a jury question. In reviewing Title VII claims that are
> supported by circumstantial evidence, we use the familiar
> McDonnell    Douglas/Burdine    three-step    burden-shifting
> framework. Under this framework, the plaintiff shoulders the
> initial burden ... of establishing a *prima facie* case of racial [or sex]
> discrimination.    Where direct evidence of discrimination is

> unavailable, a Title VII plaintiff may nonetheless present
> circumstantial evidence of discrimination sufficient to create a jury
> question. In reviewing Title VII claims that are supported by
> circumstantial evidence, we use the familiar <u>McDonnell</u>
> <u>Douglas/Burdine</u> three-step burden-shifting framework. Under this
> framework, the plaintiff shoulders the initial burden ... of
> establishing a *prima facie* case of racial [and sex] discrimination.
> If a *prima facie* case has been shown, then the defendant must
> articulate some legitimate, nondiscriminatory reason for the
> [adverse employment action]. If this is accomplished, the plaintiff
> may then attempt to demonstrate that the proffered reason was in
> fact merely a pretext for the defendant's actions.  The ultimate
> burden of persuading the trier of fact that the defendant
> intentionally discriminated against the plaintiff remains at all times
> with the plaintiff.  In deciding a motion by the defendant for
> judgment as a matter of law in a discrimination case where the
> defendant has offered nondiscriminatory reasons for its conduct, a
> court conducts a focused inquiry. The court must, considering all
> the evidence, ascertain whether the plaintiff has cast doubt on the
> defendant's proffered nondiscriminatory reasons sufficient to allow
> a reasonable factfinder to determine that the defendant's proffered
> legitimate reasons were not what actually motivated its conduct.
> The district court must evaluate whether the plaintiff has
> demonstrated such weaknesses, implausibilities, inconsistencies,
> incoherencies, or contradictions in the employer's proffered
> legitimate reasons for its action that a reasonable factfinder could
> find them unworthy of credence.

<u>Silvera v. Orange County School Board</u>, 244 F.3d 1253, 1258 (11th Cir. 2001)(internal citations

and quotations omitted, ellipses in original).

Even if Ms. Fitzpatrick's claims sex and race discrimination claims were timely filed, she

cannot establish that she received adverse treatment because of her race or sex.  In order to

"establish a *prima facie* case of disparate treatment, a plaintiff must show that (1) she is a

member of a group protected by Title VII, (2) she was qualified for the position or benefit

sought, (3) she suffered an adverse effect on her employment, and (4) she suffered from a

differential application of work or disciplinary rules."   <u>Enwonwu v. Fulton-DeKalb Hospital</u>

<u>Authority</u>, 2008 WL 2009517 (11th Cir. May 12, 2008).  The Eleventh Circuit held that "[a]n

adverse employment action must effect a serious and material change in the terms, conditions, or privileges of employment." Id. (internal quotations omitted).  Although the plaintiff may subjectively view an employment action as adverse, "the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Id.

        a.     Issuance of state cars

Even if plaintiff's claims relating to the issuance of state vehicles were not barred for her failure to timely raise them in her EEOC charge, she cannot establish a *prima facie* case of discrimination.  Although the plaintiff complains that she was not issued or reissued a state vehicle in or around 2002 or 2003 on the basis of her sex or race, she cannot establish that she was qualified for such a benefit.  Her sex discrimination claim is based on a delay in the issuance of a state vehicle upon her promotion to Program Director in 2002.  However, the plaintiff fails to establish that such a slight delay in receipt of issuance of a state car constitutes an adverse employment action.  A tangible employment action is "a significant hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Hulsey v. Pride Restaurants, LLC, 367 F.3d 1238, 1245 (11th Cir. 2004))(citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

The plaintiff's race discrimination claim is based on her claim that she was not immediately reissued a state vehicle in 2003, after a mandate by the governor removed state vehicles from individuals driving fewer than $20,000 miles per year.  The plaintiff cannot establish that she had a need, and was thus qualified for the issuance of a state car.  Indeed, in the event that the plaintiff traveled for work, she always had access to state vehicles from the state motor pool.  Further, she cannot establish that any adverse effect on her employment or differential treatment because of her race or sex.

b.    <u>Failure to Promote</u>

The plaintiff brings two sex discrimination claims arising out of promotions to the position of Division Director.  The plaintiff claims that in 2003, she applied for the position of Division Director but was ranked eight out of eight applicants by the Alabama State Personnel Department.  In her judicial complaint, the plaintiff complains that she does not understand how her ranking was so low and claims she was discriminated against on the basis of her race.  (Doc. 1, para. 13).  She does not allege that she should not have received the promotion; she only complains that her ranking was too low.  (<u>Id.</u>).  It is undisputed that rankings on the register are done solely by the Alabama State Personnel Department.  (Affidavit of Teresa Brunson; Fitzpatrick depo p. 58, l. 13-16).

The plaintiff also brings a sex discrimination claim arising out of a promotion to Division Director of Pesticide Management in 2006.  She asserts that Tony Cofer, who was promoted to the position sought by the plaintiff, was less qualified than she.  However, she does not know Mr. Cofer's experience or background.  Neither of the plaintiff's two sex discrimination claims, for her low ranking or failure to promote, was timely brought in her EEOC charge.

Even if the plaintiff's claim for failure to promote were timely or properly presented to the EEOC, she cannot establish a *prima facie* case.  The Eleventh Circuit has held that in order "to establish a *prima facie* case of discrimination for failure to promote, a plaintiff must prove (1) that [she] was a member of a protected class; (2) that [she] was qualified for and applied for the position; (3) that [she] was rejected; and (4) that others who were not members of the protected class were hired."  <u>Laosebikan v. Coca Cola Company</u>, 2006 WL 224167 (11th Cir. 2006).  The plaintiff cannot establish that she was qualified for any position as Division Director for Pesticide Management.  The plaintiff merely asserts that she was qualified for the position

17

because she had length of service.  She does not present any evidence that establishes the qualifications for the position or that she met those qualifications.  Accordingly, the plaintiff fails to establish a *prima facie* case for failure to promote and summary judgment is due to be granted.

Even if plaintiff could establish a *prima facie* case, Mr. Cofer was promoted for non-discriminatory, sex-neutral reasons.    Mr. Cofer had previous experience in Pesticide Management, which the plaintiff did not.  (Affidavit of Teresa Brunson).  Further, Mr. Cofer was ranked higher on the register for this position by the Alabama State Personnel Department. (Affidavit of Teresa Brunson).   Mr. Cofer also had previous experience working with the Alabama Department of Environmental Management (ADEM), which was unique experience particularly beneficial to a position over Pesticide Management.  (Affidavit of Teresa Brunson).

Even if the plaintiff could present a *prima facie* case of race or sex discrimination, all of the defendant's conduct complained of by the plaintiff was engaged in for the race and sex neutral reasons discussed more fully above.  Plaintiff cannot establish that any of the reasons articulated by the Defendant for its conduct are pretextual.  Accordingly, the defendant's motion for summary judgment is due to be granted.

ii.   <u>Retaliation</u>

The plaintiff makes two claims of retaliation:  1) her transfer to the position of Program Director in charge of Safety and Quality Assurance, 2) her move to an allegedly less desirable office space.

The plaintiff cannot establish that the alleged conduct was retaliatory.  Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3, "forbids employer actions that discriminate against an employee … because [s]he has opposed a practice that Title VII forbids or has made a charge … in a Title VII investigation, proceeding, or hearing."  <u>Cyrus v. Hyundai Motor Mfg. Alabama,</u>

LLC, 2008 WL 1848796 (April 24, 2008)(quoting Burlington Northern & Santa Fe Ry. V.

White, 548 U.S. 53 (2006)).   In order to establish a *prima facie* case of retaliation using the

McDonnell Douglas framework, plaintiff must show the following elements:  (1) she engaged in

statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a

causal connection between the protected conduct and the adverse employment action.  McCann

v. Tillman, ___ F.3d ___, 2008 WL 1991172 (11th Cir. May 9, 2008); Hendrix v. Snow, 2006

WL 288099 (11th Cir. 2006); Brungart v. Bell South Communications, Inc., 231 F.3d 791, 798

(11th Cir. 2000); Ashe v. Aronov Homes, Inc. , 354 F.Supp.2d 1251, 1264 (M.D. Ala. 2004).

The Eleventh Circuit has held that as with a discrimination claim, if the defendant "articulate[s]

legitimate reasons for [its] actions, [plaintiff] must then show that the employer's proffered

reasons for taking the adverse action were actually pretext for prohibited retaliatory conduct."

McCann v. Tillman, ___ F.3d ___, 2008 WL 1991172 (11th Cir. May 9, 2008)(internal

quotations omitted).  In order to make such a showing, the plaintiff "must demonstrate such

weaknesses, implausibilities, inconsistences, incoherencies, or contradictions in the employer's

proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy

of credence."   McCann v. Tillman, ___ F.3d ___, 2008 WL 1991172 (11th Cir. May 9,

2008)(internal quotations omitted).

For the purposes of summary judgment, the Defendant admits that Ms. Fitzpatrick

engaged in statutorily protected conduct when she complained of alleged discrimination to the

ASEA in June, 2006.

As concerns the second element of the *prima facie* case, Ms. Fitzpatrick fails to establish

that she suffered an adverse employment action.  A tangible employment action is "a significant

hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

decision causing a significant change in benefits." Hulsey v. Pride Restaurants, LLC, 367 F.3d 1238, 1245 (11th Cir. 2004))(citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). The transfer to the position of Program Director of Safety and Quality Assurance was a lateral transfer. The transfer of these duties to the plaintiff began in January 2006, prior to the alleged protected act. The creation of the Safety and Quality Assurance Program was complete in July 2006, when the plaintiff was named its Program Director. The plaintiff was a Program Director before she was transferred and she was a Program Director after she was transferred. She was moved to a different office; one that was located closer to the labs for which she was to provide safety and quality assurance oversight. She cannot produce any evidence that the office was objectively undesirable or that the move was retaliatory. Further, the plaintiff received the same rate of pay and had no reduction in benefits or seniority. When an employment action does not result in a change in pay, benefits, or seniority, it is insufficient to sustain a retaliation claim. Horn v. University of Minnesota, 362 F.3d 1042, 1046 (8th Cir. 2004) (quoting Buettner v. Arch Coal Sales Co., 216 F.3d 707, 715 (8th Cir. 2000), cert. denied 531 U.S. 1077, 121 S.Ct. 773, 148 L.Ed 2d 672 (2001). It is undisputed that the lateral transfer did not result in a change of pay, benefits or seniority.

Finally, there is no causal connection between any protected conduct and any alleged adverse employment action taken against Ms. Fitzpatrick. In order to establish a causal connection, a plaintiff must prove that the protected activity and the adverse action are "not completely unrelated." Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004). There is no evidence, nor can there be, that the plaintiff was transferred in retaliation for complaining to the ASEA about alleged race discrimination.

The plaintiff cannot present any evidence of a causal link between her complaint to the ASEA and her lateral transfer. The responsibilities for safety, quality assurance, and certification were being shifted to the plaintiff as early as January 2006, prior to the protected act. The plaintiff had been previously assigned some of the laboratory oversight in January 2006, but was fully moved into the position of Program Director in charge of safety and quality assurance in July 2006. Thus, the shift in the plaintiff's duties began prior to her protected conduct. Further, her transfer and office move do not constitute employment actions and did not affect her rate of pay, benefits or ability to perform her job functions. Ms. Fitzpatrick maintains a private office and is the Program Director in charge of Quality Assurance and Safety in the Department of Agriculture labs. Ensuring proper quality assurance, safety, and certification in the labs are important responsibilities. The plaintiff cannot establish retaliatory intent, and her claims must fail.

When an employment action does not result in a change in pay, benefits, or seniority, it is insufficient to sustain a retaliation claim. Horn v. University of Minnesota, 362 F.3d 1042, 1046 (8th Cir. 2004) (quoting Buettner v. Arch Coal Sales Co., 216 F.3d 707, 715 (8th Cir. 2000), cert. denied 531 U.S. 1077, 121 S.Ct. 773, 148 L.Ed.2d 672 (2001). Significantly, "a transfer can constitute an adverse employment action for Title VII purposes, but only if it involves a reduction in pay, prestige or responsibility." Enwonwu v. Fulton-DeKalb Hospital Authority, 2008 WL 2009517 (11th Cir. May 12, 2008).

Because plaintiff fails to establish any tangible employment action or causal connection between a protected activity and conduct of the defendant, her retaliation claims must fail.

Even if plaintiff could establish a *prima facie* case, she cannot show that the reasons for the actions complained of are pretext for retaliatory conduct. Accordingly, summary judgment is due to be granted.

### V.  Conclusion

For all the reasons stated herein, Defendant submits that Summary Judgment is due to be entered in its favor and against the Plaintiff on all claims asserted herein.


       /s/     Emily C. Marks

EMILY C. MARKS


       /s/     E. Hamilton Wilson, Jr.

E. HAMILTON WILSON, JR.
Attorneys for the Defendant


OF COUNSEL:
BALL, BALL, MATTHEWS & NOVAK, P.A.
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, Alabama  36102-2148
Phone:  (334) 387-7680
Fax:     (334) 387-3222

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 2, 2008, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following:

Juraldine Battle-Hodge
207 Montgomery St., Ste. 215
Montgomery, AL  36104-3528

/s/ Emily C. Marks
OF COUNSEL